*The following opinion was delivered:
By the Chancellor.
This writ of error is brought upon a decision of the supreme court, refusing to set aside a report of referees, upon a reference under the statute, in a matter of account—on which report a final judgment has been rendered in that court, against the plaintiff in error. The whole of the testimony and the documentary evidence which was before the referees, and not the conclusions of fact, which the referees may have drawn from the same, is set forth at length in this record, in the form of a special or supplementary report of the referees. The case has therefore been argued here upon this mass of complicated and conflicting evidence, as if the members of this court were judges not only of the law, but of the facts, and had power to reverse a judgment of the supreme court in such case, if, from the whole evidence, a majority of them should think the referees had arrived at a wrong conclusion upon a matter of fact merely. For one, I feel myself bound to disclaim any such power or jurisdiction in this court on a writ of error. The referees, in cases of this kind, are, as to matters of fact, merely a substitute for the jury, whose decision upon questions of fact cannot be reversed upon a writ of error; although the court in which the original action is pending may set aside the verdict as against the weight of evidence, or grant a new trial upon newly discovered facts, as justice may seem to require. In the case of The Rensselaer Glass Factory v. Reid, 5 Cowen’s Rep. 587, most of the members of this court, who expressed any opinion on the subject, admitted that questions of law arising on the reference, and which had been afterwards passed upon by the supreme court, might be placed upon the record of that court in such a manner as to enable this court to review the decision, and to reverse the judgment, if that decision was erroneous. But, for the reason stated by Senator Golden, it did not become necessary for this court to pass upon this preliminary question, which was then raised by the defendant’s counsel, as a majority of the members were in favor of affirming the judgment of the supreme court upon the merits of the case, without regarding the question of form.
To the extent of jurisdiction *which was claimed for this court in that case, however, I am prepared to go. The court in which the original suit is pending may direct such of the facts as are necessary to present the questions of law passed upon in that court, to be placed upon the record, in the form of a special or supplementary report of the referees, in the nature of a special verdict or bill of exceptions. And upon such a record, a superior court, to which the case is brought by a writ of error, may review and correct any erroneous decision which has been made, upon a question of law. But if the questions of law arise upon disputed facts, which it is necessary to have settled before those legal questions can be determined, the referees must draw the conclusions of fact from the evidence before them, as in a special verdict. They are not at liberty to state the evidence only upon the record, and thus to leave it to the court to which the cause is carried by a writ of error, to determine the facts, as well as to decide the questions of law which may arise upon those facts when ascertained. Such was, unquestionably, the understanding of the justices of the supreme court, in the case of The Rensselaer Glass Company v. Reid, before referred to ; for in that case they did not direct all the evidence in the cause to be inserted in the record, but they directed a statement of the facts to be drawn up, under the direction of the chief justice, *484 to enable this court to review the decision of the supreme court upon the questions of law which had arisen out of those facts. The only objections, in point of form, in that case, were, that the statement of facts was not incorporated into the record, as directed by the supreme court; and such statement did not, upon its face, purport to be a special report from the referees to the supreme court, of the facts which had been established by the evidence before them on the reference. By a provision in the revised statutes, 2 R. S 384, § 47, the court in which the cause is pending, in addition to the general report of the amount which the referees may find due to either party, may require such referees to report, specially, their decision in admitting or rejecting any witness, in allowing or overruling any question to a witness, or the answer thereto, and all other proceedings by them, together with the testimony before them, and their reasons for allowing or *disallowing any claim of either party. This provision, however, does not, neither was it intended to confer any new power upon the court in which the suit was pending. It is merely declaratory of a power which such court before possessed. See Revisers’ note to this section, in their Report. Neither was it intended by the legislature to have all the testimony, in the case of a reference, incorporated into the record, for the purpose of authorizing an appellate court, upon a writ of error, to review the decision of the referees upon questions of fact; for the next section expressly provides that if the report of the referees is confirmed, judgment shall be entered thereon, in the same manner and with the like effect as upon the verdict of a jury. But the court in which the reference is pending may set aside the report of the referees, and grant a re-hearing, in its discretion, if the judges of that court are satisfied injustice has been done, or that the decision of the referees in rejecting or allowing any particular item of the account is against the weight of evidence, in the same manner that they may set aside the verdict of a jury, upon a case made. That court, therefore, must necessarily have the power to call upon the referees for a statement of all the testimony as to such disputed item; and in a case where it is impossible to ascertain whether the referees decided against a party upon a disputed question of fact, or upon a mistake in the law as applicable to facts which they considered as established, that court is also authorized to call for the reasons of their decision ; so that any mistake, in point of law, which has occurred, may be corrected. Where the facts and the law are so blended together that it is impossible to ascertain whether the referees have decided against a party upon one ground or the other, such party, before he can sustain a writ of error, must obtain from the referees a special report, showing the conclusions at which they have arrived upon the questions of fact, as he cannot otherwise show to the appellate court that the referees have actually made a mistake, in point of law. This difficulty appears to exist in' relation to nearly every question which the plaintiff in error has attempted to raise before this court.
The plaintiff’s first point, that the supreme court erred in deciding that the plaintiff in error had no authority from *the Messrs. Bleecker to enter into the contract made with the defendant in error, appears to be involved in the difficulty above suggested. But even allowing to him the most favorable construction of all the testimony, I think the referees could not have arrived at the conclusion, in point of fact, that the Bleeckers ever intended to authorize him to enter into a contract, for the purchase of materials which should be unlimited as to price. Yet this was necessarily the case in relation to such a contract as was testified to by Kennedy. Whether the justices of the supreme court, and the referees, were probably under a mistake in supposing that such a contract was entered into after the written agreement of the fifth *486 of July, cannot be determined on this writ of error, as that was a pure and unmixed question of fact, upon which we have no right to review their decisions. If such an agreement was made, and had been complied with on the part of Heath, he was entitled to recover for his services under the common counts of the declaration, even if none of the special counts were applicable to the case. A party may recover under the common counts, in assumpsit, for the stipulated price due on a special contract, not under seal, where such contract has been executed, Leeds v. Burrows, 12 East, 1. Sheldon v. Cox, 5 Dow. & Ry. 277. Felton v. Dickenson, 10 Mass. Rep. 287. Jewell v. Schroeppel, 4 Cowen, 564. Bank of Columbia v. Patterson, 7 Cranch, 299.
The agreement in this case, if any, was to pay for the materials furnished, upon the performance of the contract on the part of the plaintiff. He was therefore entitled to interest, at least from the commencement of the suit, which was a legal demand of payment.
It was only necessary to lay the damages in the declaration at an amount sufficiently large to cover the balance actually due to the plaintiff, after deducting any payments which had been made. As there had been no specific appropriation of the sums received of the defendant in this case as the agent of Ellice or the Bleeckers, the plaintiff had a right to apply the payments upon those contracts which the defendant was authorized to make, as such agent; and the amount of labor performed and materials furnished, which came within the Contract testified to by Kennedy, would exceed the whole amount or balance allowed by the referees.
If an agent in making a contract, exceeds his authority, the person with whom he contracts may hold him personally responsible for the whole amount due on the contract, although the agent may have the right to claim of his principal remuneration to the extent of the price he was authorized to give. Thus, if I employ an agent to buy for me a horse, at a price not exceeding $100, and he buys one for which he agrees to give $110, he makes himself personally liable to the vendor for the whole purchase money ; but as between me and my agent, he may insist that I shall take the horse and allow him the amount I had authorized him to give. 1 Evans’ Poth. 78. 1 Liver, on Agency, 98.
There is no validity in the objection that the referees permitted one of the plaintiff’s witnesses to refresh his memory, on his examination, by the inspection of an affidavit which he had himself sworn to five years before, when the facts as to which he was called on to testify were comparatively of recent occurrence. Witnesses are in the constant habit of refreshing their recollections, particularly as to dates and numbers, by examining books and papers, which they know to be correct, before they go into court to give their evidence ; and if they have neglected to do so before going into court, I can see no valid reason why they should not be permitted to inspect the written memoranda in court, provided they can, after such inspection, distinctly recollect the facts, independent of the written memoranda or document; especially where there is no ground to suspect there has been any tampering with the witnesses, or that any abuse of the privilege is intended. Such is the frailty of human memory, that very few witnesses would be able to testify as to particular dates, numbers, quantities and sums, after the lapse of a few years, if they were not permitted to refer to papers and writings which they knew to be correct at the time they were made.
These are all the questions of law which appear to have been necessarily involved in the decision of the referees and of the supreme court; and entertaining the views I have before expressed, as to the power of this court to re-examine ^disputed questions of fact upon a writ of error, I feel *487 myself bound to vote for the affirmance of the judgment of the court below ; although it is possible that, as a juror or a referee, I might have come to a different conclusion as to some of the questions of fact involved in this case. I agree with the supreme court that it is evident, from the testimony, that this agent acted in perfect good faith, and that not only did he do what appeared to be, but what in reality was for the benefit of his principal. I do not, therefore, believe the plaintiff in error has any reason to apprehend that he will be left by that principal to sustain an individual loss, whether he did in truth go beyond his authority, or is subjected to the payment of this claim in consequence of a mistake as to the real state of the facts.
On the question being put, Shall this judgment he reversed ? all the members of the court, with the exception of two, (there being in the whole nineteen members present, answered in the negative. So of course the judgment of the Supreme Court was affirmed.